## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANDREW WEARY** | **CIVIL ACTION** |
| **VERSUS** | **NO.  10-1793** |
| **N. BURL CAIN, BUDDY CALDWELL** | **SECTION "C"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Andrew Weary ("Weary"), is an inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On August 3, 2000, Weary was charged by bill of information in Washington Parish with the armed robbery and attempted first degree murder of Luther Harris.[3]

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 2 of 4, Bill of Information, 8/30/00.

The record reflects that, on April 5, 2000, Luther Harris, a 79 year old resident of Bogalusa, Louisiana, received a telephone call from Weary, who had been his neighbor for several years.[4] Weary told Harris that he wanted to come over to repay Harris some money he had borrowed. When Harris opened the door, Weary struck him with a tire iron several times in the head. While trying to protect himself, one of Harris's fingers was severed. Harris eventually fell to the floor. Weary went to the bedroom for a few minutes and then left. Harris called the police. Upon their arrival, the officers noticed a large amount of blood in the living room and kitchen. The officers called for medical services, and Harris was taken to the hospital. Harris was able to tell the police that Weary attacked him. Harris's relatives later located Harris's wallet and informed police that seven dollars in cash was missing from it. The relatives also were unable to locate Harris's cash he placed under his mattress when he cashed his social security check. Weary was later arrested in Lake Charles, Louisiana.

On December 4, 5, and 6, 2000, Weary was tried before a jury, and he was found guilty as charged on both counts.[5] At a hearing held, January 25, 2001, the State filed a multiple offender bill charging Weary as a second offender.[6] The matter was heard by the Trial Court on May 9, 2001, and the Court sentenced Weary as a second offender on the armed robbery count to serve 75 years

---

[4]The facts are taken from the unpublished opinion of the Louisiana First Circuit on direct appeal. *State v. Weary*, 826 So.2d 654 (La. App. 1st Cir. 2004) (Table); St. Rec. Vol. 4 of 4, 1st Cir. Opinion, 2001-KA-2286, p. 2, 5/10/02.

[5]St. Rec. Vol. 2 of 4, Trial Minutes (4 pages), 12/4/00; Trial Minutes, 12/5/00; Trial Minutes, 12/6/00; Jury Verdict (Count 1), 12/6/00; Jury Verdict (Count 2), 12/6/00; St. Rec. Vol. 3 of 4, Trial Transcript, 12/4/00; Trial Transcript, 12/5/00; Trial Transcript, 12/6/00.

[6]St. Rec. Vol. 2 of 4, Minute Entry, 1/25/01.

in prison without benefit of parole, probation, or suspension of sentence.[7]  The Trial Court also denied counsel's oral motion to reconsider the sentence.[8]  On May 21, 2001, the Trial Court denied counsel's later filed motions for new trial, to reconsider sentence, and for post-verdict judgment of acquittal submitted by counsel.[9]  Weary also filed a motion to reconsider the sentence which was denied by the Trial Court on June 18, 2001.[10]

On appeal, Weary's counsel argued that the sentence imposed on the armed robbery count was unconstitutionally excessive.[11]  Weary also filed a supplemental brief in which he argued that the bill of information was insufficient to place him on notice of the charges against him.[12]  On May 10, 2002, the Louisiana First Circuit affirmed the armed robbery conviction and sentence finding no merit to either claim.  The Court also found on its errors patent review that the Trial Court failed to sentence Weary on the attempted first degree murder conviction.[13]  The Court remanded the matter for sentencing.  The Louisiana Supreme Court later denied Weary's related writ application without stated reasons.[14]

---

[7]St. Rec. Vol. 2 of 4, Multiple Bill Hearing Minutes, 5/9/01; St. Rec. Vol. 3 of 4, Multiple Bill Hearing Transcript, 5/9/01.

[8]*Id.*

[9]St. Rec. Vol. 2 of 4, Motion for New Trial, 5/10/01; Motion to Reconsider Sentence, 5/10/01; Motion for Post-Verdict Judgment of Acquittal, 5/10/01; Trial Court Order(1), 5/21/01; Trial Court Order(2), 5/21/01; Trial Court Order(3), 5/21/01.

[10]St. Rec. Vol. 2 of 4, Motion to Reconsider Sentence (pro se), 5/31/01; Trial Court Order, 6/18/01.

[11]St. Rec. Vol. 4 of 4, Appeal Brief, 01-KA-2286, 10/23/01.

[12]St. Rec. Vol. 4 of 4, Pro Se Supplemental Brief, 01-KA-2286, 1/16/02.

[13]*State v. Weary*, 826 So.2d at 654; St. Rec. Vol. 4 of 4, 1st Cir. Opinion, 2001-KA-2286, 5/10/02.

[14]*State ex rel. Weary v. State*, 847 So.2d 1228 (La. 2003); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2002-KH-1925, 6/20/03.

In the meantime, on July 23, 2002, the Court sentenced Weary on the attempted first degree murder count to serve 25 years at hard labor to run concurrently with the other sentence.[15]

On December 15, 2003, Weary submitted an application for post-conviction relief to the Trial Court in which he raised five grounds for relief:[16] (1) insufficient evidence to support either conviction; (2) he was denied a preliminary hearing; (3) failure to honor his right to appeal; (4) the State failed to properly identify him; and (5) ineffective assistance of counsel.  The Trial Court construed Weary's third claim as a request for leave to file an out of time appeal on the denial of the motions to reconsider the armed robbery sentence and on the claims raised in the application for post-conviction relief.[17]  The Court therefore granted him an out-time-appeal and instructed him to pursue the other claims presented in the application in the new appeal if he so desired.

In this appeal, Weary's counsel raised two assignments of error:[18] (1) the sentence imposed for attempted first degree murder was excessive; and (2) counsel's failure to file a motion to reconsider the sentence should not preclude review, and if it does, counsel was ineffective in failing to file the motion.  Weary was also allowed to present seven additional claims to the Court:[19] (1) insufficient evidence to convict on both counts; (2) he was denied a preliminary hearing; (3) he was denied the right to appeal; (4) insufficient identification evidence; (5) ineffective assistance of counsel; (6) inadmissible other crimes evidence was allowed at trial; (7) the prosecutor abused his

---

[15]St. Rec. Vol. 2 of 4, Sentencing Minutes, 7/23/02; St. Rec. Vol. 4 of 4, Sentencing Transcript, 7/23/02.

[16]St. Rec. Vol. 4 of 4, Uniform Application for Post-Conviction Relief, 12/29/03 (dated 12/15/03).

[17]St. Rec. Vol. 4 of 4, Trial Court Order, 1/28/04; see also, Trial Court Order, 2/3/05.

[18]St. Rec. Vol. 4 of 4, Appeal Brief, 05-KA-2042, 10/24/05.

[19]St. Rec. Vol. 4 of 4, 1st Cir. Opinion, 2005-KA-2042; see also, Trial Court Order, 2/3/05.

discretion during the presentation of the case; and (8) insufficient evidence to convict on the armed robbery charge.

In addressing this appeal on May 5, 2006, the Louisiana First Circuit noted that it would not consider Weary's claims related to the armed robbery conviction, since it had already done so in the previous appeal.[20]  The Court declined to consider the ineffective assistance of counsel claims, deferring them to review on post-conviction.  The Court also found that the claims regarding other crimes evidence and abuse of discretion by the prosecutor were not preserved for appeal by contemporaneous objection, citing La. Code Crim. P. art. 841, *inter alia*.  The Court also determined that the conviction rendered moot Weary's claim that he was denied a preliminary hearing.  With regard to the sentencing issues raised by counsel, the Court held that the failure to file a motion to reconsider procedurally barred review of the sentence on appeal, and the sentence otherwise was not excessive.  Because of this, the Court found the related ineffective assistance argument to be without merit.

The Louisiana Supreme Court denied without stated reasons Weary's subsequent writ application on February 2, 2007.[21]  Weary's convictions and sentences became final 90 days later, on May 3, 2007, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also*, *Jiminez  v. Quarterman*, 555 U.S. 113, __, 129 S. Ct. 681, 686-87

---

[20]*Id.*, p. 2.

[21]*State v. Weary*, 948 So.2d 1076 (La. 2007); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2006-KO-1799, 2/2/07; La. S. Ct. Letter, 2006-KO-1799, 7/19/06 (showing postmark 6/7/06).  The State failed to provide the Court with a copy of the writ application.

(2009) (where a state court grants a criminal defendant the right to file an out-of-time appeal during state collateral review, his judgment is not yet final for purposes of seeking federal habeas review); *see also*, *Burton v. Stewart*, 549 U.S. 147, 156-57 (2007) (the AEDPA limitations period "did not begin until both his conviction and sentence became final by the conclusion of direct review or the expiration of the time for seeking such review." (emphasis added, quotation omitted)).

## II.   <u>Post-Conviction Proceedings</u>

On January 22, 2008, Weary submitted an application for post-conviction relief to the Trial Court raising the following grounds for relief:[22] (1) he was constructively denied effective assistance of counsel; (2) ineffective assistance of counsel; (3) the evidence was insufficient to support the armed robbery conviction; (4) the evidence was insufficient to support the attempted first degree murder conviction; and (5) he was exposed to double jeopardy.

The Trial Court denied relief on March 4, 2008, finding no merit in the ineffective assistance of counsel claims.[23]  The Court also resolved that the sufficiency of the evidence was addressed and resolved on appeal.  The Court further noted that the double jeopardy claim was without merit and could have been raised on appeal or before trial.  The Court also noted that, to the extent Weary complained of improprieties in the multiple bill proceeding, the claims were waived for failure to raise a timely objection.

Weary sought review of that order in the Louisiana First Circuit on August 25, 2008.[24]  On December 19, 2008, the Court denied the application on procedural grounds finding that Weary

---

[22]St. Rec. Vol. 4 of 4, Uniform Application for Post-Conviction Relief, 1/25/08 (dated 1/22/08).

[23]St. Rec. Vol. 4 of 4, Reasons for Judgment and Judgment, 3/4/08.

[24]The State failed to provide a copy of this writ application.  The Court obtained the post-mark and filing date of August 25, 2008, from the office of the clerk of the Louisiana First Circuit.

failed to attach the documents necessary for the Court to conduct its review.  The Court instructed Weary that he could file a proper application by February 25, 2009.

Weary thereafter submitted a writ application to the Louisiana Supreme Court on January 13, 2009, seeking review of the appellate court's order and seeking an order to be provided with the documents needed to refile in the appellate court.[25]

While that was pending, on February 11, 2009, Weary submitted another writ application to the Louisiana First Circuit seeking review of the Trial Court's denial of his post-conviction claims.[26]  The Court denied the application without stated reasons on June 8, 2009.  The record does not reflect that Weary sought further review of this order.

Weary then supplemented his pending Louisiana Supreme Court writ application to include review of the denial of his post-conviction claims on the merits by the Louisiana First Circuit.[27]  On January 22, 2010, the Louisiana Supreme Court denied without stated reasons Weary's pending writ application.[28]

## III.   <u>Federal Petition</u>

On June 17, 2010, the clerk of this Court filed Weary's petition for federal habeas corpus relief, in which he raised four grounds for relief:[29] (1) he was constructively denied effective

---

[25]St. Rec. Vol. 1 of 4, La. S. Ct. Writ Application, 09-KH-277, 2/6/09 (undated); St. Rec. Vol. 4 of 4, La. S. Ct. Letter, 2009-KH-277, 2/6/09 (showing postmark 1/13/09).

[26]St. Rec. Vol. 1 of 4, 1st Cir. Writ Application, 2009-KW-0328, 2/12/09 (dated 2/11/09).

[27]*See* Rec. Doc. No. 23.

[28]*State ex rel. Weary v. State*, 25 So.3d 138 (La. 2010); St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2009-KH-0277, 1/22/10.

[29]Rec. Doc. No. 1.

assistance of counsel; (2) ineffective assistance of counsel; (3) the evidence was insufficient to support the armed robbery conviction; and (4) he was exposed to double jeopardy.

In its first answer and memorandum in opposition to Weary's petition, the State argued that, while the claims had been presented to each level of the Louisiana courts, the federal petition was not timely filed.[30]  After receiving a reply from Weary challenging the limitations defense, the State filed a supplemental memorandum in opposition recognizing that it erred in suggesting that his 2008 post-conviction application was submitted in November rather than January.  Having done so, the State indicated that the federal petition was timely filed and the claims were without merit.[31]

In his traverse filed after the supplemental opposition memorandum, Weary set forth his arguments in support of the claims summarily presented in his petition.[32]  He also prayed that his claims not be dismissed as meritless.

## IV.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[33] applies to this petition, which is deemed filed in this court under the federal mailbox rule on February 12, 2010.[34]  The threshold questions in habeas review under the amended

---

[30]Rec. Doc. Nos. 16, 17.

[31]Rec. Doc. Nos. 18, 21.

[32]Rec. Doc. No. 22.  In his petition and supporting documents, Weary provided briefing of only his first claim, constructive denial of counsel.

[33]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

The State has not presented any procedural defenses to Weary's petition, conceding that his claims are exhausted and his petition is timely filed. In reviewing the procedural history of this matter, as discussed *infra*, the Court finds that the petition is timely filed and the claims were exhausted through the state courts for the following reasons.

## A.     The Petition is Timely Filed

With regard to the timeliness of Weary's petition, the Court notes that his convictions became final on May 3, 2007. Under federal law, the AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[35] *Duncan v. Walker*, 533 U.S.

---

for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Weary's federal habeas petition on June 17, 2010, when it was transferred here from the Louisiana Middle District. Weary dated his signature on the petition on February 12, 2010. This is presumed to be the earliest date on which he could have delivered the documents to prison officials for mailing to a federal court. *See also*, Rec. Doc. No. 1, pp. 7-10.

[35]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here: (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

167, 179-80 (2001).  Under the plain language of § 2244, Weary had until May 3, 2008, to file a

timely federal application for habeas corpus relief and he failed to do so.  Thus, literal application

of the statute would bar Weary's § 2254 petition as of that date unless he is entitled to tolling as

provided for by the AEDPA.[36]

In this case, the AEDPA's one-year filing period began to run on May 4, 2007, the day after

Weary's conviction was final.  The filing period ran for 263 days, until January 22, 2008, when

Weary submitted his application for post-conviction relief to the state trial court.  Under normal

---

28 U.S.C. § 2244(d) (2006).

[36]Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2) (2006).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).  For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.  *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 122 (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).  Requests for documents and transcript copies are not other collateral review for purposes of the tolling calculation.  *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *2 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541, at *1 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts; *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling); *Cf. Gonzales v. Wilkinson*, 269 Fed. Appx. 481, 484-86 (5th Cir. Mar. 12, 2008) (delay in receiving transcript copies does not warrant statutory or equitable tolling where motion based on the transcript was not timely or properly filed under state law).

10

circumstances, the post-conviction application would have remained pending in the state trial court until April 3, 2008, which was 30 days after the trial court ruled, and Weary did not timely seek review of that order under La. App. R. 4-3.[37]  *See Phillips v. Donnelly*, 216 F.3d 508, 511 n. 3 (5th Cir.), *modified on other grounds*, 223 F.3d 797 (5th Cir. 2000) (holding that state pleading was no longer "pending" where it "was decided and settled, regardless of whether [petitioner] had notice of the denial on that date").

In this case, Weary argues here, as he did in the state courts, that the Trial Court failed to provide him with notice of its ruling.[38]  In such a case, this Court may consider equitably tolling[39] the period resulting from the lack of notice where it is shown that the petitioner was diligent in pursuing his rights upon untimely receipt of that order.  *Id.*  Such is the case here.

Weary attests that he obtained the ruling after his inquiry only a few months after the ruling.[40]  He also promptly filed for review in the Louisiana First Circuit.  He has provided un-refuted exhibits in the form of mail logs which would indicated that he did not receive mail from the state trial court between the filing of his post-conviction application and July 22, 2008, when the

---

[37]La. App. R. 4-3 grants no more than 30 days for a litigant to seek a supervisory writ from an intermediate appellate court after the district court's ruling.  *See Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001).

[38]Rec. Doc. Nos. 18, 23 (Louisiana First Circuit writ application submitted with Louisiana Supreme Court writ application)

[39]The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus.  *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).  Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

[40]Rec. Doc. Nos. 18, 23.

state trial court sent him a copy of the order.[41]   Considering these facts, Weary's state post-conviction application is considered to have remained pending until the related writ application was resolved by the Louisiana Supreme Court on January 22, 2010, just one month before he is deemed to have filed this federal petition under the applicable mailbox rule.  Weary's petition is timely as conceded by the State.

###   B.   The Claims Are Exhausted

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented through to the highest state court in a procedurally proper manner. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."  *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78).

The Court has determined that Weary fulfilled the exhaustion requirement with regard to the claims raised here through his writ application 2009-KH-277 in the Louisiana Supreme Court.  In the original application, Weary only sought review of the Louisiana First Circuit's denial of his writ No. 2008-KW-1822, which was based on procedural deficiencies.[42]   Although the State failed to

---

[41]*Id.*

[42]St. Rec. Vol. 1 of 4, La. S. Ct. Writ Application, 09-KH-277, 2/6/09.

provide the entirety of the Louisiana Supreme Court's record, the Court has obtained from the clerk of that court copies of two supplements filed by Weary.[43] In his supplements, Weary sought review of the claims raised and denied by the Louisiana First Circuit in the properly filed Writ No. 2009-KW-0328. Having reviewed the supplements to the writ application, the Court has confirmed that Weary has exhausted his state court remedies as to the four claims raised in this federal petition.

## V.    Standards of Review on the Merits

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

---

[43]Rec. Doc. No. 23. A member of the Court's staff reviewed the entirety of the Louisiana Supreme Court's wallet and personally obtained the relevant copies now in this Court's record.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

 The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *cf. Wright v. West*, 505 U.S. 277, 304 (1992).  The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000).  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (brackets in original) *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the

14

precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641

(quoting  *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.    Constructive Denial of Counsel (Claim No. 1)

Weary claims that the State failed to assign a specific appointed attorney at the outset of his

criminal proceedings in violation of Louisiana law.[44]  As a result, he claims that he did not have

consistent representation such that counsel would have known to move for a preliminary hearing.

He argues that, as a result, he was effectively denied counsel and denied a preliminary hearing.

He raised these grounds on post-conviction review and the Trial Court denied relief pursuant

to the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  This was the last

reasoned decision on the issue.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

In response to his petition, the State argues, without legal support, that Weary was not

entitled to, or guaranteed, the same attorney at each stage of the proceedings.  The State also notes

that he did have the same attorney during some of the pretrial proceedings and at trial.

Initially, the Court notes that habeas corpus review is, of course, limited to questions of

federal constitutional dimension, and federal courts do not review alleged errors in the application

of state law.  *See Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review

does not lie for errors of or in applying state law).  To the extent Weary complains that the State

failed to comply with Louisiana law in assigning him a particular attorney, that claim is not

cognizable.

To the extent he asserts that he was constructively denied counsel under the Sixth

Amendment, his claims is without merit.  In *United States v. Cronic*, 466 U.S. 648 (1984), the

---

[44]Rec. Doc. Nos. 1, 22.

United States Supreme Court held that a defendant might be constructively denied counsel although an attorney had been appointed. The *Cronic* Court recognized that the performance of counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding. *Cronic*, 466 U.S. at 654 n. 11. The *Cronic* presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of the defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing"; or (3) counsel "is called upon to render assistance where competent counsel very likely could not." *Cronic*, 466 U.S. at 658-59 (internal citations omitted). It is in the presence of these "circumstances of magnitude" where "the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

The Supreme Court also has emphasized that for *Cronic* to apply, "the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002). "For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*," the Supreme Court held that a case does not come under *Cronic* merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding. *Bell*, 535 U.S. at 697. The *Cronic* standard applies only when counsel has entirely failed to challenge the prosecution's case. *Bell*, 535 U.S. at 697. When counsel provides "some meaningful assistance," the *Cronic* standard is inapplicable. *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986).

The distinction between counsel's failure to oppose the prosecution entirely and counsel's failure to do so at certain points is a "difference . . . not of degree but of kind." *Bell*, 535 U.S. at 697. Unless there is a constitutional error of such magnitude that "no amount of showing of want

16

of prejudice would cure" the error, "there is generally no basis for finding a Sixth Amendment violation" in the absence of a showing of "how specific errors of counsel undermined the reliability of the finding of guilt." *Id.*, at 659 & n. 26. Furthermore, the presumed prejudice standard of *Cronic* is reserved for "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.*, at 658. The petitioner has the burden to show that he was constructively denied counsel. *See Childress v. Johnson*, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997).

The issue of the constructive denial of counsel under *Cronic* is a mixed question of law and fact. *See French v. Jones*, 225 F.3d 658, 2000 WL 1033021, at *3 (6th Cir. Jul, 18, 2000) (Table, Text in Westlaw). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

In this case, the record shows that Weary was represented by appointed counsel at each stage of the proceedings. At his arraignment, he was represented by John Hogue.[45] The Court at that time gave the parties 30 days to file motions and set a pretrial conference for October 17, 2000. On that date and at each proceeding thereafter, including motion hearings and trial, Weary was represented by the same appointed attorney, John J. "Jack" McGuckin, Jr.[46] Thus, his suggestion that he had inconsistent representation is without factual basis.

The record also demonstrates that McGuckin subjected the prosecution's case to meaningful adversarial testing at each stage. Counsel argued pretrial motions to obtain discovery, to obtain a

---

[45] St. Rec. Vol. 2 of 4, Minute Entry, 9/5/00.

[46] St. Rec. Vol. 2 of 4, Minute Entry, 10/17/00; Minute Entry, 10/23/00; Minute Entry, 11/20/00; Trial Minutes (4 pages), 12/4/00; Trial Minutes, 12/5/00; Trial Minutes, 12/6/00; Minute Entry, 1/25/01; Multiple Bill Hearing Minutes, 5/9/01; Sentencing Minutes, 7/23/02.

copy of the police report, and for a speedy trial, including those motions filed *pro se* by Weary.[47] As will be discussed later in this report, counsel more than adequately challenged the evidence at trial through meaningful cross-examination and argument.   There is nothing in the record to demonstrate that Weary was completely deprived of assistance of counsel or that his counsel failed to challenge the state's case under the *Cronic* standards.

To the extent he suggests that counsel's failure to move for a preliminary hearing was deficient or otherwise prejudicial to him, such a challenge is to be evaluated under the standards set forth in *Strickland*, 466 U.S. at 668.   Weary in fact argues in his next claim that counsel gave ineffective assistance where counsel denied him or failed to move for the preliminary hearing.   That issue will be considered in the next section of this Report.

Having found that counsel provided more than "some meaningful assistance," the *Cronic* standard is inapplicable to Weary's case, and he has failed to establish that he was constructively denied counsel.   *Craker*, 805 F.2d at 542.   The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law.   Weary is not entitled to relief on this claim.

## VII.   Ineffective Assistance of Counsel (Claim No. 2)

Weary alleges that his appointed counsel, Jack McGuckin, provided ineffective assistance on several grounds:[48] (1) he failed to request a preliminary hearing; (2) he had no knowledge of the case and did not investigate; (3) he failed to give petitioner copies of the answers to his pretrial

---

[47]St. Rec. Vol. 2 of 4, Minute Entry, 10/17/00.  The speedy trial motion was signed by another public defender, James E. Talley, before Weary was even billed or arraigned.  The motion was argued before the Court by McGuckin. *See* St. Rec. Vol. 2 of 4, Motion for Speedy Trial, 8/15/00.

[48]Rec. Doc. Nos. 1, 22.

motions; (4) he failed to raise objections to hearsay and inconsistent statements; (5) he failed to properly defend petitioner as to the identification procedures; (6) he failed to inform the prosecution of alibi witnesses or to subpoena these witnesses; (7) he failed to file pertinent motions for discovery and to suppress evidence and failed to continue to pursue discovery; (8) he failed to give an opening statement; and (9) he was unethical in lying to the prosecution. Weary argues that Louisiana has recognized that these deficiencies exist in its indigent legal representation programs.

He raised these grounds on post-conviction review and the Trial Court denied relief pursuant to the standards set forth in *Strickland*. This was the last reasoned decision on the issue. *Ylst*, 501 U.S. at 802.

The State summarily contends that Weary has not shown that counsel's performance was "defective" or that the outcome would have been different in light of the evidence.[49] The State, therefore, argues that the claim is meritless.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

As mentioned above, the standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland*, 466 U.S. at 668, relied upon by the state trial court. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. To meet the burden of proving ineffective assistance

---

[49]Rec. Doc. No. 21, p. 5.

of counsel, the petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). The analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994). In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as

to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley*, 18 F.3d at 1226 (quoting *Strickland*, 466 U.S. at 693). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

In the instant case, beyond the list of alleged failures by counsel, Weary has not explained or pointed to any particular evidence in the record to support his ineffective assistance of counsel claims. Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *United States v. Holmes,* 406 F.3d 337, 361 (5th Cir.2005) ("mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional claim.") (citing

*Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir.1998)).  Nevertheless, Weary's generalized claims are without merit for the following reasons.

### A.    Failed to Request a Preliminary Hearing

As discussed above, Weary claims that his counsel was ineffective in failing to move for a preliminary hearing.   Under Louisiana law, either the State or the defense can move for a preliminary examination under La. Code Crim. P. art. 292.  The primary purpose of the preliminary examination  is to insure that probable cause existed to hold the defendant in custody pending trial exists.  *State v. Mayberry,* 457 So.2d 880, 881 (La. App. 3rd Cir.), *writ denied,* 462 So.2d 191 (La. 1984).   A failure of proof at a preliminary examination  does not result in the dismissal of the charges pending against a defendant.   *Mayberry,* 457 So.2d at 882.

Under state law, while there is no requirement that a preliminary hearing be held, once one is requested, the court must provide the hearing.  *Accord State v. Gomez*, 940 So.2d 663 (La. 2006).  Furthermore, absent a showing of prejudice, the probable cause determination is rendered moot following a defendant's conviction and sentence.   *State v. Washington*, 363 So.2d 509, 510 (La. 1978).

Weary does not explain what he perceives as the prejudice resulting from counsel's failure to move for the preliminary hearing in this case.   The hearing would not have resulted in a dismissal of the charges against him; thus he would still have faced trial on the charges.   In addition, because he remained in jail awaiting trial, the state trial court gave him credit for time served towards the sentences ultimately imposed.   That time has enured to his benefit.   Considering these matters, Weary has not shown any prejudice resulting from counsel's failure to request a preliminary hearing.

In addition, the United States Fifth Circuit has held that a prisoner has no federal constitutional right to a preliminary examination. *Harris v. Estelle*, 487 F.2d 1293, 1296 (5th Cir. 1974). Thus, counsel's failure to request the hearing also did not violate federal law and in that regard was not deficient or prejudicial to Weary.

For these reasons, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law. Weary is not entitled to relief on this claim.

### B.    Failed to Investigate

Weary claims that his counsel did not know his case and did not investigate the case. He points to no particular failure by counsel or other source which would tend to support this contention.

However, the record demonstrates that counsel was prepared to argue each of the pretrial motions, including motions for discovery. The detailed questioning of the witnesses at the trial reflects that counsel was well-prepared and well-informed about the facts of the case. For example, counsel questioned the officers about information contained in the police report and in pictures of the house, including the configuration of the house, their efforts to enter the home to investigate, and the type of object used to hit Harris.[50] Counsel was also able to elicit testimony to establish that no one tested the blood at the home or dusted for fingerprints.[51] Counsel also obtained information from Officer Goodwin that Harris did not initially report any money being stolen.[52] Counsel was also prepared for and did ask the victim and his daughter questions about Harris's relationship with

---

[50]St. Rec. Vol. 3 of 4, Trial Transcript, pp. 24-27, 31, 48, 50, 12/5/00.

[51]*Id.*, pp. 31, 32-33, 49, 62.

[52]*Id.*, p. 37, 61.

Weary.[53]   Counsel also demonstrated his knowledge of Weary's prior record and used that information to advise Weary not to testify at trial, although Weary did not heed that advice.[54]

The Supreme Court addressed the duty to investigate in *Strickland*, stating that attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.  The reasonableness of counsel's actions can be determined or substantially influenced by the defendant's own statements or actions. *Id*.  The Supreme Court also held that, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*.

Under *Strickland* and its progeny, to establish ineffective assistance Weary would have to demonstrate that, but for counsel's failure to investigate, there is a "reasonable probability" that a jury would not have found him guilty.  *Accord Strickland*, 466 U.S. at 694.  This reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Vasques v. Thaler,* No. 08-70034, 2010 WL 3168206, at *5 (5th Cir. Aug. 11, 2010) (citing *Strickland*, 466 U.S. at 694).

In this case, Weary has not established that his counsel failed to conduct himself above the standard of reasonableness.  As noted above, Weary does not expound on what more his counsel could have found with further investigation, nor has he shown how it would have impacted the jury's

---

[53]*Id*., pp. 79-80, 90.

[54]St. Rec. Vol. 3 of 4, Trial Transcript, p. 6, 12/6/00.

decision.  Weary has not established that counsel failed to investigate or that his investigation fell short of constitutional performance.

For the foregoing reasons, Weary has failed to establish that his counsel's performance was deficient or prejudicial.  The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.  Weary is not entitled to relief on this claim.

### C.      Failed to Communicate and Give Him Copies of Answers to Pretrial Motions

Weary argues that his counsel erred in failing to communicate with him and provide him copies of the responses to the pretrial motions.  The Constitution, however, does not require that trial decisions, even those affecting a defendant's constitutional rights, must be made by the defendant personally rather than by his counsel.  *Rault v. Louisiana*, 772 F.2d 117, 132 (5th Cir. 1985) (citing *Winters v. Cook*, 489 F.2d 174, 176-77 (5th Cir. 1973) (some strategic decisions which entail the waiver of a constitutional right may be made by counsel without consultation with the accused, citing *Henry v. Mississippi*, 379 U.S. 443 (1965)).  "[C]ounsel has wide latitude in deciding how best to represent a client."  *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003).

Weary again has not explained his arguments in support of this claim.  Based on the foregoing precedent, he had no right to be informed of each discovery response or to be apprised of every decision made by counsel on his behalf.  He has not pointed to any particular deficiency in counsel's handling of the trial decisions and defense strategies that might be sufficient to support federal habeas relief.

For these reasons, Weary has not demonstrated that counsel's actions fell below constitutional standards.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of *Strickland*.  Weary is not entitled to relief on this claim.

**D.      Failed to Raise Objections to Hearsay and Inconsistent Statements**

Weary alleges that his counsel failed to raise objections to hearsay and inconsistent statements, presumably referring to matters at trial.  He does not, however, identify any particular testimony which would have been objectionable or that otherwise fits the categories of hearsay or inconsistent statements.  As indicated above, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller*, 200 F.3d at 282.

The record reflects that counsel raised numerous objections, including *inter alia* relevance and hearsay objections, during the testimony of the State's witnesses.[55]  The record does not demonstrate that counsel's handling of the trial testimony and placing of objections during trial was deficient or otherwise prejudicial to the defense.

Weary has not demonstrated that counsel's actions fell below constitutional standards.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of *Strickland*.  Weary is not entitled to relief on this claim.

**E.      Failed to Properly Defend Petitioner as to the Identification Procedures**

Although Weary again does not expound on this claim, under a broad reading, he has not demonstrated that counsel failed to raise questions with the identification made by the victim.  At trial, Officer Mike Goodwin testified that Harris told him several times, and was adamant, that Andrew Weary was the person who beat him up.[56]  On cross-examination, defense counsel immediately questioned the officer about the identification, and the officer confirmed that Harris

---

[55] *See e.g.*, St. Rec. Vol. 3 of 4, Trial Transcript, pp. 23, 35, 40, 57, 75, 84, 85, 12/5/00.

[56] St. Rec. Vol. 3 of 4, Trial Transcript, pp. 19, 20, 23, 12/5/00.

was certain about his attacker's identity.[57]  Counsel also elicited testimony to indicate that there was nothing at the scene, including fingerprints or DNA, to implicate Weary in the crime.[58]

Officer Randy Hodges also testified that Harris immediately identified Weary as the person who beat him.[59]  He and Officer Charles Helton also indicated that there was no evidence retrieved from the scene to link Weary to the scene.[60]

Harris, the victim, also testified that Weary was the person who attacked him in his home and he identified Weary at trial.[61]  Under Louisiana law, a victim's positive identification  of a defendant, as well as the victim's testimony alone, has been held to constitute sufficient identification evidence regarding the crime committed against the victim.  *Holderfield v. Jones*, 903 F. Supp. 1011, 1017 (E.D. La. 1995) (citing *State v. Turner*, 591 So.2d 391 (La. App. 2d Cir. 1991)).

The record demonstrates that counsel challenged the reliability of the identification as much as possible based on the circumstances of the case.  Weary has not pointed to any particular deficiency in counsel's questioning of the witnesses.

Weary, therefore, has not demonstrated that counsel's actions fell below constitutional standards.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of *Strickland*.  Weary is not entitled to relief on this claim.

---

[57]*Id.*, pp. 23, 29.

[58]*Id.*, pp. 31, 32-33.

[59]*Id.*, p. 40.

[60]*Id.*, pp. 50, 57.

[61]*Id.*, pp. 70, 71, 83.

## F.     Failed to Inform the Prosecution of and Subpoena Alibi Witnesses

Weary alleges that counsel failed to call alibi witnesses or to inform the state about these witnesses.  Weary does not identify any particular witness nor does he indicate to what these alleged witnesses would testify.  It is also noteworthy that Weary has not indicated exactly what his alibi would have been.

It is well settled that claims that counsel failed to call witnesses are not favored on federal habeas review, because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  On habeas review, the petitioner is required to demonstrate prejudice by "nam[ing] the witness, demonstrat[ing] that the witness was available to testify and would have done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the testimony would have been favorable to a particular defense."  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

Weary has not met any portion of his burden here.  A review of the record also does not reveal anything that would support this facet of his ineffective assistance of counsel claim.  During his testimony in which he denied committing this crime, Weary stated that he spent the day at his girlfriend's home and then dug-up bait for a man identified as Jack Brister.[62]  Weary further testified that around 9:00 p.m. "I went by [Brister's] house and he can verify that, however, he didn't get subpoenaed . . ."[63]  Weary then stated that he left Brister's home on the other side of the small town of Bogalusa at 9:15 p.m.  The evidence provided by the police and Harris indicated that the attack

---

[62]St. Rec. Vol. 2 of 4, Trial Transcript, pp. 10-11, 12/6/00.

[63]*Id.*, p. 11.

28

occurred after 10:00 p.m. or at around 10:30 p.m., and the police were dispatched to Harris's home at 10:32 p.m.[64]  Thus, to the extent Weary may claim that Brister and his girlfriend could have provided alibis for him during the time of the crime, he is mistaken.  He himself revealed that he left Brister's home at least 45 minutes to an hour before the crime occurred.

The timing of events provided by Weary himself tends demonstrate that counsel would not have been able to present them as an alibi to the crime that occurred well after he left his former girlfriend and over an hour after he left Brister's home just across town.  Weary also testified at trial that he was no longer speaking with his former girlfriend, implying that she would not have been available to testify.  Assuming that the woman and Brister were his intended alibi witnesses, he has not demonstrated, and the record does not support, that either would have provided an alibi defense during the time of the crime.

Based on the record, Weary has not demonstrated that counsel's actions in failing to call alibi witnesses fell below constitutional standards.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of *Strickland*.  Weary is not entitled to relief on this claim.

### G.   Failed to File Motions and Pursue Discovery

Under the broadest of readings, Weary alleges that his counsel failed to file pertinent motions and continue to pursue discovery as part of the pretrial investigation.  Weary does not identify with any particularity what motions should have been filed by counsel.  As mentioned above, this claim is conclusory and unworthy of further consideration.

---

[64]St. Rec. Vol. 2 of 4, Trial Transcript, pp. 39, 69, 12/5/00.

As further discussed above, numerous pretrial motions were argued by counsel, including Weary's discovery motions.  Upon consideration of those motions, the State provided defense counsel with open file discovery.[65]  With this, counsel had access to the State's files, and there is nothing to indicate that further discovery motions were necessary.

Weary, therefore, has not demonstrated that counsel's actions fell below constitutional standards.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of *Strickland*.  Weary is not entitled to relief on this claim.

### H.   <u>Failed to Give an Opening Statement</u>

Weary contends that his counsel was ineffective for failing to make an opening statement at trial.  He does not expound on this argument or indicate how this may have impacted the verdict. He also does not suggest what counsel should have said or how he was prejudiced by counsel's failure to avail himself of the opportunity.

Nevertheless, counsel's decision as to whether to give an opening statement falls with the zone of trial strategy.  *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (*citing William v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965) (Whether or not to make an opening statement  to jury is "matter of professional judgment")); *see*, *United States v. Stedman*, 69 F.3d 737, 740 (5th Cir. 1995); *see also  Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) ("it is well-settled that the decision to waive an opening or closing statement is a commonly accepted strategy, and without more, does not constitute ineffective assistance of counsel." (citations omitted)); *Huffington v. Nuth*, 140 F.3d 572, 573 (4th Cir. 1998) ("Although it may be unusual to waive an opening statement, such a decision is  essentially  tactical  in  nature,  and  not  objectively  unreasonable.");  *United  States  v.*

---

[65]St. Rec. Vol. 2 of 4, Minute Entry, 11/20/00.

30

*Rodriguez-Ramirez*, 777 F.2d 454, 458 (9th Cir. 1985) ("The timing of an opening statement, and even the decision whether to make one at all, is ordinarily a mere matter of trial tactics and in such cases will not constitute the incompetence basis for a claim of ineffective assistance of counsel.").

In *Williams v. Beto*, 354 F.2d at 698, as in Weary's case, the evidence against the defendant was very strong.  As a result, the Fifth Circuit found that waiver of an opening statement  "was very likely the wiser course to follow," because "[t]he best hope of defense counsel . . . was to catch the prosecution asleep or lacking evidence at some fatal juncture of the trial."  *Williams*, 354 F.2d at 703.  Thus, "[i]t could well be considered that this was no time for defense counsel, at the very outset, in an opening statement to reveal the weak hand he had to play."  *Id*.  The same is true here. As will be discussed later in this opinion, the evidence against Weary was strong, and there was nothing much for counsel to point to which would have created doubt in the jury's mind through an opening statement.

For these reasons, Weary has not indicated a deficiency or any prejudice resulting from counsel's decision not to make an opening statement.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of *Strickland*.  Weary is not entitled to relief on this claim.

### I.     <u>Unethical in Lying to the Prosecution</u>

Weary claims that counsel behaved unethically in lying to the prosecution.  He fails to explain this argument or point to any lie made by counsel to the prosecutor.  This conclusory allegation is insufficient to support an ineffective assistance of counsel claim.  Furthermore, a review of the record and transcripts does not reveal a time where defense counsel lied to the prosecutor or acted unethically.  Without some showing that counsel acted below constitutional standards, Weary

has failed to meet his burden under *Strickland* on this claim.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of *Strickland*.  Weary is not entitled to relief on this claim.

## VIII.  <u>Insufficient Evidence of Armed Robbery (Claim No. 3)</u>

Weary next claims that the evidence was insufficient to establish that he committed an armed robbery.  Specifically, in his traverse, Weary argues that Harris never told police that he had money missing from his home.  The officers obtained that information from other sources, but Harris never made that claim.

Weary raised this claim in his second direct appeal, and the Louisiana First Circuit did not consider it, because the armed robbery conviction had been addressed in the first appeal.[66]  He raised the claim thereafter in his 2008 post-conviction application.[67]  The Trial Court denied relief noting that the conviction had been affirmed on appeal.  The Court also held that this claim was repetitive because it was or could have been raised on appeal.[68]  The appellate court denied Weary's later application seeking review of this claim.[69]

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), the Court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992); *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).  Thus, to determine whether the commission of a crime is adequately

---

[66]St. Rec. Vol. 2 of 4, 1st Cir. Opinion, 2005-KA-2042, p. 2, 5/5/06.

[67]St. Rec. Vol. 2 of 4, Uniform Application for Post-Conviction Relief, 1/25/08 (dated 1/22/08).

[68]St. Rec. Vol. 2 of 4, Reasons for Judgment and Judgment, 3/4/08.

[69]St. Rec. Vol. 2 of 4, 1st Cir. Order, 2009-KW-0328, 6/8/09.

supported by the record, the court must review the substantive elements of the crime as defined by state law. *Alexander v. McCotter*, 775 F.2d 595, 597-98 (5th Cir. 1985); *Turner v. McKaskle*, 775 F.2d 999, 1001 (5th Cir. 1983). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *Guzman*, 934 F.2d at 82 (citing *Tyler v. Phelps*, 643 F.2d 1095, 1102 (5th Cir. 1981)).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). A reviewing habeas court is not authorized to substitute its interpretation of the evidence or the credibility of witnesses for that of the fact-finder. *Alexander*, 775 F.2d at 598.

A claim of insufficient evidence presents a mixed question of law and fact. *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this Court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Weary here challenges the sufficiency of the evidence to convict him on the armed robbery count. In Louisiana, armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. Rev. Stat. Ann. § 14:64. A dangerous weapon is

defined as "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm."   La. Rev. Stat. Ann. § 14:2(3). Louisiana law recognizes a tire iron to be a dangerous weapon.  *State v. Richardson*, 896 So.2d 257 (La. App. 2d Cir. 2005); *State v. Richardson*, 729 So.2d 114 (La. App. 4th Cir. 1999); *State v. Smith*, 466 So.2d 1343 (La. App. 3d Cir. 1985).

The "force or intimidation" in an armed robbery "may be applied at any time in the course of the crime in order to complete the offense."  *State v. Walker*, 681 So.2d 1023, 1028 (La. App. 2d Cir. 1996).  An armed robbery is committed "not only if the perpetrator uses force or intimidation to take possession of the property, but also if force or intimidation is used to retain possession immediately after the taking, or to carry away the property, or to facilitate escape."  *State v. Meyers*, 620 So.2d 1160, 1163 (La. 1993) (finding that defendant committed a robbery when he used force or intimidation to retain possession of money he had just taken from a cash register).

Under Louisiana law, in addition to proving the statutory elements of the charged offense at trial, the State is required to prove a defendant's identity as the perpetrator.  *State v. Draughn*, 950 So.2d 583, 593 (La.), cert. denied, 552 U.S. 1012 (2007); *State v. Ingram*, 888 So.2d 923, 926 (La. App. 5th Cir. 2004). Where the key issue is identification, the State is required to negate any reasonable probability of misidentification.  *Id*.

The evidence in this case established that, at around 10:30 p.m., on April 5, 2000, the 79 year-old Harris opened his front door and saw Weary standing there.[70]  He had known Weary, his

---

[70]St. Rec. Vol. 3 of 4, Trial Transcript, pp. 69-70, 12/5/00.

neighbor, for about a year, and they visited regularly.[71]  Weary also called him before coming over to the house.

Harris was absolutely sure that Weary was the man who entered his home that night.[72]  While at the door, Weary began repeatedly hitting Harris about the head with a tire iron.[73]  After Harris fell to the ground in a pool of blood, and with a severed finger suffered in the attack, he saw and heard Weary go into the bedroom for a few minutes.[74]  Harris testified that he had money under his mattress, and he had $7.00 in his wallet.[75]

Harris recalled that he told police that his watch and over $200 was taken from the house.[76]  Although the money was gone, his daughter found his wallet under the bed.[77]  Upon a search of the house by his daughter, Mary Henry, while Harris was still in the hospital, she was able to confirm that the envelope of money under the mattress was gone.[78]  Weary had been the only person in the house other than the police and the family members.[79]

The jury had before it evidence that Weary, identified by Harris, entered Harris's home armed with a tire iron.  He took money and a watch from Harris's bedroom before leaving.  As noted

---

[71]*Id.*, p. 70.

[72]*Id.*, p. 77.

[73]*Id.*, pp. 71-72.

[74]*Id.*, pp. 72, 73.

[75]*Id.*, p. 73.

[76]*Id.*, p. 78.

[77]*Id.*, p. 87 (Mary Henry).

[78]*Id.*, pp. 84-85, 87 (Mary Henry), 91.

[79]*Id.*, pp. 83-84.

above, the jury also had sufficient identification evidence before it to establish that Weary was the perpetrator.  *Holderfield*, 903 F. Supp. at 1017 (a victim's positive identification constitutes sufficient identification evidence); *Preacher v. Estelle*, 626 F.2d 1222, 1225 (5th Cir. 1980) (identification evidence sufficient where victim, who never identified anyone else as the perpetrator, positively identified defendant at the trial, gave the basis upon which she made the identification, and was subject to cross-examination).

For these reasons, Weary has failed to establish that there was insufficient evidence under the *Jackson* standard.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme Court law.  Weary is not entitled to relief on this claim.

## IX.   Double Jeopardy (Claim No. 4)

Weary alleges that his convictions for armed robbery and attempted first degree murder violate the protections against double jeopardy.  He argues in his traverse that the armed robbery was a necessary element of the charge of attempted first degree murder.  The State argues that, according to the jury charges, Weary's attempted murder charge was based on the victim's age and not the armed robbery factor.

Weary raised this claim in his 2008 post-conviction application.[80]  The Trial Court denied relief finding that each crime required an element not present in the other.[81]  Specifically, the murder charge had as an element the specific intent to kill which was not present in the armed robbery charge.  The armed robbery charge required a theft, or taking, that was not an element of the first degree murder charge.  The Court also held that this claim was repetitive because it was or could

---

[80]St. Rec. Vol. 2 of 4, Uniform Application for Post-Conviction Relief, 1/25/08 (dated 1/22/08).

[81]St. Rec. Vol. 2 of 4, Reasons for Judgment and Judgment, 3/4/08.

have been raised on appeal.  The state appellate court denied Weary's later application seeking review of this claim.[82]

Weary's double jeopardy claim raises a mixed question of law and fact for purposes of this Court's federal habeas review.  *Carlile v. Cockrell*, 51 Fed. Appx. 483, 2002 WL 31319380, at *1 (5th Cir. 2002) (applying the AEDPA's mixed question standard to a double jeopardy claim); *Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999) (same).

The Double Jeopardy Clause of the Fifth Amendment protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.  *Brown v. Ohio*, 432 U.S. 161, 165 (1977).  Weary's claim arises under the third prong.  Punishment for the same offense is determined by "whether each provision requires proof of an additional fact which the other does not."  *Id.*, at 166 (quoting *Blockburger  v. United States*, 284 U.S. 299, 304 (1932)).

In *Blockburger*, the Supreme Court held that "the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."  *Id.*, 284 U.S. at 304.   To meet this test, the Court must "compare the criminal statutes at issue and inquire whether each provision requires proof of an additional fact that the other does not."  *United States v. Singleton*, 16 F.3d 1419, 1442 (5th Cir. 1994) (citing *Blockburger*, 284 U.S. at 304); *United States v. Fisher*, 106 F.3d 622, 632 (5th Cir. 1997) ("Double jeopardy concerns are not raised if each crime charged requires an element of proof the other crimes charged do not."); *accord Bias v. Ieyoub*, 36 F.3d 479, 480 (5th Cir. 1994).

---

[82]St. Rec. Vol. 2 of 4, 1st Cir. Order, 2009-KW-0328, 6/8/09.

The bill of information by which Weary was charged indicated that he was accused in count one of committing "armed robbery" in violation of "R.S. 14:64."[83]  He was accused in count two of committing "attempted first degree murder" in violation of La. Rev. Stat. Ann. "R.S. 14:27:30."

Armed robbery is defined in La. Rev. Stat. Ann. § 14:64(A), as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."

Under Louisiana law, in 2000, the offense of first degree murder was defined in La. Rev. Stat. Ann. § 14:30 as follows:[84]

A.      First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, drive-by shooting, first degree robbery or simple robbery.
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman, peace officer, or civilian employee of the Louisiana State Police Crime Laboratory or any other forensic laboratory engaged in the performance of his lawful duties.
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.
(4) When the offender has specific intent to kill or inflict great bodily harm and has offered, has been offered, has given, or has received anything of value for the killing.
(5) When the offender has the specific intent to kill or to inflict great bodily harm upon a victim who is under the age of twelve or sixty-five years of age or older.
(6) When the offender has the specific intent to kill or to inflict great bodily harm while engaged in the distribution, exchange, sale, or purchase, or any attempt thereof, of a controlled dangerous substance listed in Schedules I, II, III, IV, or V of the Uniform Controlled Dangerous Substances Law.
(7) When the offender has specific intent to kill and is engaged in the activities prohibited by R.S. 14:107.1(C)(1).

---

[83]St. Rec. Vol. 2 of 4, Bill of Information, 8/30/00.

[84]La. Rev. Stat. Ann. § 14:30.

The "attempt" element is defined by La. Rev. Stat. Ann. § 14:27 which provides in pertinent part that "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object."

In Weary's case, the bill of information did not set forth a particular subsection of the first degree murder statute under which he was charged. Instead, it was not until trial that the prosecution and the Trial Court referenced two specific factors or theories under which he was being prosecuted. The State and the Trial Court referenced subpart §14:30(A)(1), during the commission of an armed robbery, and subpart § 14:30(A)(5), where the victim is over 65 years of age, as the basis for the attempted first degree murder charge against Weary.[85]  Consistent with the statute, the Trial Court charged the jury as follows:[86]

> Thus, in order to convict the defendant of attempted first degree murder, you must find that defendant had specific intent to commit first degree murder; and two, that the defendant did or omitted an act for the purpose of tending directly toward the commission of first degree murder; three, that the defendant acted with specific intent to kill or while engaged in armed robbery or the defendant acted with the specific intent to kill a victim 65 years of age or older.

The assertion of alternative theories of the attempted first degree murder in Weary's prosecution did not violate double jeopardy. *Accord*, *Delap v. Dugger*, 890 F.2d 285, 314 (11th Cir. 1989).  Furthermore, the Fifth Circuit has also recognized that the Double Jeopardy Clause "does not prohibit prosecution for specific intent murder and armed robbery." *Taylor v. Whitley*, 933 F.2d 325, 328 (5th Cir. 1991).  Where the concern arises, as pointed out by Weary, is that the verdict

---

[85]St. Rec. Vol. 3 of 4, Trial Transcript, p. 82, 12/4/00; St. Rec. Vol. 3 of 4, Trial Transcript, pp. 28, 61-62, 12/6/00.

[86]St. Rec. Vol. 3 of 4, Trial Transcript, p. 62, 12/6/00.

against him may have been based on a felony, armed robbery, which also formed the basis of the attempted murder charge under Louisiana's felony-murder doctrine.

The Double Jeopardy Clause prohibits prosecution for both a felony-murder and the underlying felony. *Harris v. Oklahoma*, 433 U.S. 682, 682-83 (1977). In *Harris*, the United States Supreme Court held that a subsequent prosecution for robbery with a firearm was barred by the Double Jeopardy Clause, where the defendant had already been tried for felony-murder based on the same robbery. The *Harris* Court reasoned that "[w]hen, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one." *Id.*, at 682.

In subsequent opinions, the Supreme Court has restated that, for double jeopardy purposes, "the crime generally described as felony murder" is not "a separate offense distinct from its various elements." *Illinois v. Vitale*, 447 U.S. 410, 420-421 (1980); *accord*, *Whalen v. United States*, 445 U.S. 684, 694 (1980) (predicate offenses charged in the disjunctive are separate lesser included offenses). The Court also has deemed the converse to be true. That is, conviction of a lesser-included offense bars subsequent conviction of the greater offense. *Brown v. Ohio*, 432 U.S. 161, 168-69 (1977). This follows because both the lesser and the greater offense are, for double jeopardy purposes, the "same offense." *Id.*, at 168.

As noted above, in further applying this doctrine, the Fifth Circuit has recognized that "[w]hile the Double Jeopardy Clause prohibits prosecution for both felony murder and an underlying felony, it does not prohibit prosecution for specific intent murder and armed robbery." *Taylor*, 933 F.2d at 328. Thus, where a state defendant is charged with a felony and murder (or attempted

murder), and the murder is not based on that specific felony, the Double Jeopardy Clause is not implicated. *Id*. A petitioner may succeed on a double jeopardy claim only if the violation is apparent on the face of the indictment or record. *See*, *United States v. Broce*, 488 U.S. 563, 576 (1989); *United States v. Kaiser*, 893 F.2d 1300, 1303 (11th Cir.1990).

In the instant case, Weary was charged (and ultimately convicted) of armed robbery and attempted first degree murder. The attempted first degree murder, according to the record, was based on two theories presented to the jury: (1) the specific intent to kill or cause great bodily harm during the commission of the armed robbery; or (2) the specific intent to kill or cause great bodily harm to a person over the age of 65. The evidence at trial tended to prove both that Weary beat Harris with a tire iron to effectuate the robbery and that Harris was 79 years old on the day of the attack. The jury was also provided with a general verdict form, which did not require that they specify the theory under which they found Weary to be guilty.[87]

Under the doctrines set forth in *Blockburger* and *Harris*, the convictions for both armed robbery and attempted first degree murder during the commission of that same robbery clearly violate the Double Jeopardy Clause. On the other hand, if the jury convicted Weary for the armed robbery and attempted first degree murder where the victim was over age 65, there clearly would be no double jeopardy violation. *See Taylor*, 933 F.2d at 328.

To resolve this, the Court must look to another long line of cases. The United States Supreme Court has long recognized that, where two alternative theories of prosecution are presented and only one is constitutional or proper, a verdict cannot be upheld where the jury may have relied on an invalid alternative to reach the guilty verdict. *Leary v. United States*, 395 U.S. 6, 31-32

---

[87]St. Rec. Vol. 2 of 4, Jury Verdict (Count 2), 12/6/00.

(1969); *Stromberg v. California*, 283 U.S. 359 (1931); *see*, *Mills v. Maryland*, 486 U.S. 367, 376-77 (1988) (recognizing the long standing rule under *Stromberg*); *Zant v. Stephens*, 462 U.S. 862, 881 (1983) (same); *see also*, *Litwinsky v. Zavaras*, 132 F. Supp.2d 1316 (D. Col. 2001).

In *Stromberg*, the Supreme Court resolved that, where a constitutional provision forbids conviction on a particular ground, the prohibition is violated by a general verdict that could have rested on that improper ground. *Stromberg*, 283 U.S. at 359; *see Griffin v. United States*, 503 U.S. 46, 53 (1991) (explaining the *Stromberg* holding as limited to verdicts based on legal error not factual error). Where "it is impossible to tell which ground the jury selected," the verdict must be set aside. *Yates v. United States*, 354 U.S. 298, 312 (1957). Thus, a conviction can not stand where it "may have rested" on the impermissible ground. *United States v. Cappas*, 29 F.3d 1187 (7th Cir. 1994) (quoting *Griffin*, 503 U.S. at 471).

Under the traditional *Stromberg* analysis, a verdict need not be set aside where it is possible for a court to conclusively determine that the jury relied on the valid ground, such as where a special interrogatory verifies the verdict or where no evidence is admitted at trial to support the legally erroneous ground. *See United States v. Weidner*, 437 F.3d 1023, 1044 (10th Cir. 2006) (the lack of evidence on legally erroneous theory established that jury relied on the valid theory); *LaFevers v. Gibson*, 182 F.3d 705, 716 (10th Cir. 1999) (special verdict form established jury convicted on valid ground). Neither of these situations is present in Weary's case.

Instead, the general verdict form and the record in Weary's case do not present any means by which this Court, or the state courts, could determine the theory on which the jury based its attempted first degree murder verdict. *See Litwinsky*, 132 F. Supp.2d at 1316. The jury found Weary guilty of armed robbery, which suggests that the attempted murder verdict could have been

42

based on the armed robbery under the felony-murder theory.  There also is no way from this record to assure that the jury instead went with the theory and overwhelming evidence that Harris was over age 65.

Thus, based on the record before this Court, the jury's verdict "may have rested" on the impermissible and constitutionally violative theory of attempted first degree murder during the commission of the armed robbery, the same armed robbery of which Weary was also convicted. Therefore, the verdict for the lesser offense of armed robbery and for the related attempted felony murder, and the sentences imposed on both counts violate the Double Jeopardy Clause and can not stand.  *See Neville v. Butler*, 867 F.2d 886, 890 (5th Cir. 1989).

The Court finds that the state courts' denial of relief on Weary's double jeopardy claim was contrary to, or an unreasonable application of, the Supreme Court precedent cited above. Accordingly, this Court must grant relief.

The proper remedy for this violation is to grant Weary's writ of habeas corpus only as to this claim unless the Louisiana State Courts, within 90 days, does the following: (1) vacates the sentences imposed for the armed robbery and attempted first degree murder convictions; (2) vacates the conviction for one of the offenses; and (3) resentences Weary on the remaining offense. *See Id.*, at 890.

## X.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Andrew Weary's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **GRANTED IN PART** and **DENIED and DISMISSED WITH PREJUDICE IN PART**  as follows:

Weary's petition should be **DENIED IN PART** as to his claims of constructive denial of effective assistance of counsel, ineffective assistance of counsel, and insufficient evidence to convict him of the armed robbery.  These claims should be **DISMISSED WITH PREJUDICE**.

Weary's petition should be **GRANTED IN PART** only as to the double jeopardy claim unless, within 90 days from the entry of a judgment by this Court, the Louisiana State Courts does the following: (1) vacates the sentences imposed for the armed robbery and attempted first degree murder convictions; (2) vacates the conviction for one of the offenses; and (3) resentences Weary on the remaining offense.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[88]

New Orleans, Louisiana, this 21st day of April, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[88]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.